4/3/2017 8:25:17 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-17-001455
Ruben Tamez

CAUSE NO: D-1-GN-17-001455

| | | |
|---|---|---|
| DONNA GRACE | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| SURGICAL CARE AFFILIATES, INC | § | 345TH |
| *Defendant.* | § | ___th JUDICIAL DISTRICT |

PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Donna Grace, ("Plaintiff") and files this original petition, complaining of Surgical Care Affiliates, LLC. ("Defendant" or "SCA") and for cause of action would show the Court as follows:

I. DISCOVERY

1  Plaintiff intends that discovery should be conducted under the Discovery Control Plan imposed by Level 2 of the Texas Rules of Civil Procedure.

II. INTRODUCTION

2. This action seeks equitable relief, compensatory damages, punitive damages, attorneys' fees, expert witness fees, taxable costs of court and pre-judgment and post-judgment interest for Defendant's retaliation against Plaintiff for her reports of violations of statutes relating to patient safety in violation of TEX. HS CODE ANN. §161.134.

III. PARTIES

3. Plaintiff is a resident of Travis County, Texas.

4. Defendant Surgical Care Affiliates, Inc ("SCA") is a Texas limited liability corporation, duly licensed to do business in the State of Texas. SCA may be served with

1

summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201- 3136.

5.  Whenever in this petition it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, partners, agents, servants or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, partners, agents, servants or employees.

## IV.  JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over all claims in this action under Texas statute. The amount in controversy exceeds the jurisdictional minimums of this Court.

7.  This Court has personal jurisdiction over Defendant as the Defendant is actively engaged in business in Texas and has sufficient minimum contacts to establish both specific and general jurisdiction.

8.  Venue is proper in Travis County, Texas, since the substantial part, if not all, of the events or omissions giving rise to Plaintiff's claims occurred within Travis County, Texas. *See* TEX. CIV. PRAC. & REM. CODE § 15.005. Further, Defendant maintains business operations in Travis County, Texas.

9.  All conditions precedent to filing this lawsuit have been met.

## V.  FACTS

10.  Defendant SCA is a company that operates hospitals and surgical facilities throughout the United States. Plaintiff was employed as the Chief Nursing Officer for Defendant at its Austin, Texas location from March 2015 until her termination in November

2016..

11. In Plaintiff's position as the Chief Nursing Officer she was immediately involved in the care received by patients seen by her department at SCA. Plaintiff was responsible for supervising more than 75 nurses, including direct and indirect reports. Starting in May of 2015 Plaintiff became increasingly concerned about the practices of one of the surgeons who performed surgeries in Defendant's facilities. Plaintiff became aware of the surgeon's medical practices that were outside the standard of care. Plaintiff's concerns involved patient safety and quality of care issues that were not being addressed by the surgeon, or in some cases were actually being jeopardized by the surgeon's lack of adherence to safety standards and practices.

12. Plaintiff took her concerns regarding the surgeon's deviations from safety standards to SCA's chief executive officer, the governing board, the medical executive committee, and the medical director. Plaintiff made a formal, confidential verbal report to them on or about May 27, 2015 regarding these quality of care issues. Plaintiff continued to issue formal, confidential verbal reports at all subsequent Medical Executive and Governing Board Meetings occurring quarterly. Plaintiff also provided a written detailed list of events for review during all Governing Board and Medical Executive Committee meetings concerning the surgeon's treatment plans and medical decisions that had resulted in preventable surgical complications, including surgical site infections, dural tears requiring patients to be returned to the operating room for repair of dural tears, patients being readmitted and/or transferred to another hospital, and/or to visit the emergency room for pain control, including one patient who lost the ability to speak after surgical site infection. Plaintiff reported to the committee that the surgeon's deviations from standards of care and safety practices were

jeopardizing patient safety and she provided documentation to support her reports.

13.     On or about May 5, 2015, and every quarter after the initial meeting, Plaintiff met with the Quality and Risk Manager to go over Plaintiff's complaints and to provide updated and detailed information in preparation for Plaintiff's presentation and to prepare written reports to the Governing Board, the Medical Executive Committee, and the Medical Director.

14.     Plaintiff also had grave concerns regarding patient safety related to other aspects of SCA operations. In one instance, on or about August 20, 2015, a fecal contamination of the one of the suites in the Operating Room Department occurred. The danger of infections from airborne contaminants resulting from fecal contamination was very, very high, and the contamination posed a serious risk to the health of the patients in what was supposed to be a sterile operating environment. When Plaintiff was notified she attempted to halt all operations until the contamination could be contained and remediated. SCA executives allowed surgeries to continue in the other operating suites despite the objections of the Plaintiff and the objections of the lead anesthesiologist on duty that day. Worse still, a bed with an anesthetized patient and the equipment in the contaminated room were moved through the Operating Room Department to another room thus contaminating the entire Operating Room Department. Cases were not cancelled for the next day. Plaintiff called the Regional Chief Nursing Officer for her assistance to stop the surgeries, to no avail. Plaintiff sought the expertise of the Director of Infection Control and Laboratory Services for Northwest Hills Surgical Hospital, who agreed the surgeries needed to be ceased. Plaintiff then called the Anesthesiologist, and the Medical Director, as members of the Governing Board, for their assistance in shutting down the Operating Room Department until it could be properly sterilized. These requests were not granted.

SCA also allowed surgeries to be performed the following day, without decontamination procedures to address the fecal contamination.

15.  On or about August 22, 2015 a crew of teammates was convened to perform terminal cleaning of the entire Operating Room Department that had been contaminated with liquid containing fecal matter. The cleaning was concluded that evening. Plaintiff remained at the facility continuing to work, and in the early morning hours of August 23, 2015, Plaintiff discovered the terminal cleaning had not been completed to standard and sterilized instruments had not been properly stored.  Plaintiff informed the Operating Room Department Manager and the Chief Anesthesiologist, a Governing Board member, of the additional work needed and she proceeded to perform the work with the assistance of two other SCA employees.

16.  On or about October 14, 2015 Plaintiff was given a first counseling with Cullen Scott, CEO, and, attending by telephone, Nicole Royal, a Human Resources employee. Despite the lapse of almost two months since the incident, Plaintiff was informed that she was being reprimanded because she did not involve enough team members in the cleaning efforts of August 22, 2015 to engender "team spirit."

17.  On or about September 30, 2016, Plaintiff was notified by two SCA employees of a storage room that was in deplorable condition and inhabited by crickets due to a seasonal cricket infestation. Plaintiff informed the Operating Room Manager, the CEO, and the CFO of the need to clean the small storage room. Plaintiff sought permission to use an orderly to assist in the work, in addition to the two employees who had reported the situation to Plaintiff.

18.  In addition to the above instances, Plaintiff was discouraged from a number of efforts

aimed at increasing accountability, adherence to safety standards, and reporting of deviations from standards. For example, Plaintiff instituted an initiative to bring SCA's procedures with regard to variance reports up to accepted standards. She found that the nurses were seldom writing variance reports, which are typically required in any situation where an anomaly or mistake in care occurs. Plaintiff was strongly discouraged by the CEO from continuing these efforts as they would result in documentation hospital mistakes, some of which severely endangered patient safety and welfare.

19. Plaintiff complained that environmental controls were not implemented to assure a safe and sanitary environment. Plaintiff also complained to her supervisors and the governing board regarding surgical suite sterilization equipment that did not allow for rapid and routine sterilization to assure that operating room materials were sterile.

20. Plaintiff reported multiple violations of law that endangered patient health, welfare, and/or safety, including but not limited to violations of Texas Administrative Code §§135.10 and 135.11 to her supervisor and the facility's governing board.

21. On or about October 20, 2016, Plaintiff was placed on 90-day probation by the CEO, Cullen Scott, again with Nicole Royal from the Human Resources Department on the telephone. According to Mr. Scott, Plaintiff was placed on probation for poor communication and not having more teammates involved in the cleaning of the storage room. Mr. Scott knew Plaintiff was preparing a comprehensive written report regarding health and safety infractions and the proliferation of patient post-surgical infections at the hospital. Plaintiff had made the same complaints and reports orally to her supervisor within the prior 60 days. Less than 30 days after being placed on probation and without any intervening events, Defendant terminated Plaintiff's employment on November 16, 2016.

22. The disciplinary actions issued against Plaintiff did not comport with SCA's disciplinary procedures. The alleged infractions were pretext. Plaintiff received a favorable evaluation, a raise and a full bonus of 25% of her salary in 2016. The quality of Plaintiff's performance did not change during the course of her employment. Plaintiff was terminated in retaliation for her reports of law violations directly related to patient safety.

## VI. CAUSE OF ACTION –RETALIATION

23. Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

24. Defendant was a hospital as defined by the Texas Health and Safety Code.

25. Plaintiff, an employee of the hospital, reported in good faith of violations of law, specifically violations of the Texas Administrative Code, including Sections 135.10 and 135.11, that posed a threat to patient health, safety, and welfare. Plaintiff made the reports to Cullen Scott, who was Plaintiff's supervisor, and, in his position as chief executive officer, the facility administrator.

26. After Plaintiff complained to Defendant about the conduct detailed above, Defendant engaged in activities, including the suspension and then termination of Plaintiff's employment in retaliation, in violation of TEX. HS CODE ANN. § 161.134. The probation and termination occurred within 60 days of Plaintiff's reports, and thus are presumed to have been in retaliation against Plaintiff in accordance with Tex. Health and Safety Code §161.134

27. As a result of Defendant's retaliation, Plaintiff has suffered loss of wages, bonuses and benefits, both in the past and in the future, as well as emotional pain, mental anguish, loss of reputation, emotional and mental impairment and disability, suffering,

inconvenience, and loss of enjoyment.

## VII. DAMAGES

28. Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

29. As a result of the actions of SCA Plaintiff has suffered loss of income and benefits. Plaintiff has also suffered loss of professional reputation, harm to her career, emotional distress and mental anguish, as a result of Defendant's conduct and seeks damages for same. Plaintiff seeks to be made whole and, as a result, requests all allowable damages from Defendant that are allowed under all relevant statutes.

30. Plaintiff further seeks punitive and/or exemplary damages for Defendant's willful malicious, intentional and/or reckless discrimination and violations of the Texas Health and Safety Code.

31. Plaintiff demands all costs incurred in prosecuting her claims, including expert witness fees, pre-judgment and post-judgment interest, costs of court and any other damages allowed under relevant statutes and the laws of the state of Texas.

## VIII. ATTORNEYS' FEES

32. In addition, as a result of the acts and omissions of Defendant, as specifically set forth herein, it was necessary for Plaintiff to secure counsel to present and prosecute this matter of her behalf. Plaintiff has retained the services of the undersigned counsel of record, and accordingly, Plaintiff sues for reasonable attorney's fees as provided under the relevant statutes.

## IX. JURY DEMAND

33. Plaintiff requests a trial by jury on all issues triable by a jury in this case. The jury

fee will be filed contemporaneously with the filing of this petition.

## X. RELIEF REQUESTED

34. Plaintiff respectfully prays that she be granted judgment for the following relief:

   a. For the actual compensatory damages for the period of time provided by the law, including appropriate back pay, bonuses or other compensation and reimbursement for lost pension, insurance and all other benefits;
   b. Reinstatement or for front pay, including bonuses and benefits, in lieu of reinstatement;
   c. Past and future mental anguish damages;
   d. Exemplary damages;
   e. Costs of court, including but not limited to expert fees;
   f. Reasonable and necessary attorneys' fees;
   g. Pre- and post-judgment interest at the maximum rate allowed by law;

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that after trial by jury she be awarded the relief requested above, and any other such further relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: /s/ Joseph Y. Ahmad
Joseph Y. Ahmad
Texas Bar No. 00941100
joeahmad@azalaw.com
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 655-1101
Telecopier: (713) 655-0062

By:_____
Jakki A. Hansen
Texas Bar No. 24000886
jhansen@hansenlawfirmpc.com
THE HANSEN LAW FIRM, P.C.
10190 Katy Freeway, Suite 440
Houston, Texas 77043
Telephone (281) 888-4364
Facsimile: (888) 492-9819

**ATTORNEYS FOR
PLAINTIFF DONNA GRACE**